**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PATRICIA MILLER, | ) | NO. CV 13-1259-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on July 24, 2013, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on August 8, 2013. Plaintiff filed a motion for summary judgment on

1  February 27, 2014.  Defendant filed a motion for summary judgment on
2  April 25, 2014.  The Court has taken the motions under submission
3  without oral argument.  See L.R. 7-15; Minute Order, filed July 29,
4  2013.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since July 26, 2007, based primarily on "fibromyalgia/rt feet [sic] problems/bipolar/migraines" (Administrative Record ("A.R.") 110-11, 128).  In the most recent administrative decision, the Administrative Law Judge ("ALJ") found Plaintiff has severe fibromyalgia, degenerative disc disease of the cervical spine, very mild degenerative joint disease of the lumbar spine, a history of left carpal tunnel syndrome treated with a brace in August 2009, morbid obesity and depression (A.R. 12).  The ALJ found that, notwithstanding these impairments: (1) Plaintiff retains the residual functional capacity for a limited range of sedentary work (A.R. 14); and (2) a person with this residual functional capacity could perform work as a charge account clerk or addressing clerk (A.R. 17-18 (adopting vocational expert testimony at A.R. 363-66)).  In denying benefits, the ALJ deemed Plaintiff's subjective complaints less than fully credible and rejected the opinion of Plaintiff's treating physician, Dr. Arthur Jimenez (A.R. 15-16).  The Appeals Council denied review (A.R. 3-5).

///
///
///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

**DISCUSSION**

**I. The ALJ Materially Erred in the Analysis of Plaintiff's Credibility.**

When an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause the symptoms alleged, the ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings, supported in the record, to justify discounting such testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Varney

///
///
///

3

v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988).[1] Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 96-7p.

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (A.R. 15). Under the above authorities, this finding mandated that the ALJ either accept Plaintiff's testimony regarding the assertedly disabling severity of her symptoms or state "specific, cogent" findings, supported in the record, to justify discounting such testimony. The ALJ discounted Plaintiff's testimony,

---

[1] In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Commissioner of Social Security Admin., 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

assertedly because of: (1) Plaintiff's failure to disclose earnings that appear on one of her Social Security records for 2011; (2) Plaintiff's statement that she was not wearing a wrist brace at one of the hearings because she had been unable to find the brace; (3) Plaintiff's testimony that she had not looked for work since she stopped working in July 2007, her testimony that she had applied for unemployment benefits, and her purported report that she was denied unemployment benefits; and (4) the assertion that Plaintiff pursued only a "mild and conservative course of treatment in the form of medication refills" (A.R. 15).

Turning first to Plaintiff's treatment, a conservative course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). The ALJ acknowledged that Plaintiff suffers from, inter alia, severe fibromyalgia, degenerative spinal conditions, and morbid obesity, severe impairments which could be expected to cause Plaintiff's pain and other symptoms (A.R. 12, 15).

Plaintiff's prescription medications for her fibromyalgia and chronic back pain have included Gabapentin (Neurontin), Tramadol, Naproxen, Baclofen, Prednisone, Soma, Vicodin, Norco, Flexeril, and Celexa (A.R. 176-77, 186, 219, 222, 227-28, 230-39, 241, 263, 303, 308, 311-12, 315, 318). Plaintiff also underwent a six week course of aquatic physical therapy (A.R. 223), and reportedly was going to have steroid injections for her back pain before trying any kind of surgery

(A.R. 330-31; see also A.R. 312, 315 (treatment records from October, 2011 indicating series of "lumbar facet block" injections would be given)). Plaintiff consistently has been medicated due to her back pain and fibromyalgia, and Plaintiff has followed the recommended course of treatment for her fibromyalgia, which does not include surgery. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (fibromyalgia is a disease "poorly-understood within much of the medical community" and for which "there is no cure"); Gillett v. Astrue, 2008 WL 5042848, at *3 (C.D. Cal. Nov. 25, 2008) ("[T]here is no surgical or other cure for fibromyalgia. . . .") (citation omitted). There is no basis in the record to support the ALJ's conclusion that the prescribed treatment was "conservative" in the sense of being less aggressive than other viable, available treatments. See, e.g., Matamoros v. Colvin, 2014 WL 1682062, at *4 (C.D. Cal. April 28, 2014) (ALJ's finding that treatment of fibromyalgia with Vicodin and Flexeril, among other drugs, was "conservative" was not based on substantial evidence; "The ALJ cannot fault [the claimant] for failing to pursue non-conservative treatment options if none exist.") (citation omitted); Sharpe v. Colvin, 2013 WL 6483069, at *8 (C.D. Cal. Dec. 10, 2013) (where claimant treated with Vicodin, Neurontin, Tramadol, Soma, Baclofen and Flexeril for her fibromyalgia, ALJ erred in rejecting claimant's credibility on the ground that the treatment purportedly was "only largely routine"); Baker v. Astrue, 2009 WL 2231680, at *7 (C.D. Cal. July 22, 2009) (ALJ's characterization of claimant's treatment as conservative was improper where there was no indication claimant failed to follow any prescribed course or treatment for her conditions which included fibromyalgia; claimant was taking Prednisone and Flexeril, among other

6

drugs). The ALJ should not have faulted Plaintiff for failing to seek non-existent alternative treatment for fibromyalgia, or for failing to pursue more aggressive treatment for her back pain.

The ALJ's remaining stated reasons for rejecting Plaintiff's credibility similarly fail to constitute the requisite specific, cogent findings, supported by the record, to uphold the ALJ's blanket rejection of Plaintiff's testimony. First, with regard to Plaintiff's alleged failure to disclose earnings in 2011, the record is unclear and might benefit from further development. A "DISCO DIB Insured Status Report" dated August 3, 2011, indicated that Plaintiff had <u>no</u> earnings in 2011 (A.R. 108-09). Yet, a later report dated August 21, 2012, purported to reflect earnings of $15,415 from self employment for <u>all four quarters</u> of 2011 (A.R. 114-15, 120). At the hearing on October 4, 2012, the ALJ asked Plaintiff about the reported income and Plaintiff said she had heard about the report from her attorney and "need[ed] to look into that" because Plaintiff insisted she had done no work in 2011 (A.R. 347). There was no further record development relating to this issue.[2] The ALJ appeared simply to assume that the

---

[2] Plaintiff was not present at the final hearing on January 29, 2013 (A.R. 10, 353-67). Plaintiff's absence appears to have been due to an error for which Plaintiff, counsel and the Administration shared responsibility. During the course of the administrative review, Plaintiff was going through a divorce and was living with her daughter, as Plaintiff testified at the October, 2012 hearing. See A.R. 342-43 (testimony); compare A.R. 133, 141 (Plaintiff and her husband initially reporting living at the same address in disability report forms). Notices of the October, 2012 administrative hearing had been sent to Plaintiff's original address and returned without acknowledgment. See A.R. 73-78, 82-84. The Administration later sent the notice of the October, 2012 hearing to an updated address provided by
(continued...)

reported earnings were in fact earnings from work Plaintiff falsely denied performing. However, the ALJ also found that Plaintiff had <u>not</u> engaged in substantial gainful activity since her August 9, <u>2008</u> application date (A.R. 12). The failure to develop and clarify the inconsistent record regarding the alleged earnings,[3] coupled with the possible internal inconsistency in the ALJ's decision, renders this reason insufficient to reject Plaintiff's credibility. <u>See</u> <u>Hostrawser v. Astrue</u>, 364 Fed. App'x 373, 377 (9th Cir. 2010) (finding claimant's non-disclosure of income to the Social Security Administration did not support adverse credibility determination where it was the only discrepancy in the claimant's testimony and was unrelated to the medical symptoms at issue, and where the ALJ found that the work did not constitute substantial gainful activity).

Second, Plaintiff's stated reason for not wearing one of her wrist braces is not a cogent reason for the ALJ's adverse credibility determination. At the first hearing, Plaintiff was wearing braces on both wrists for her carpal tunnel syndrome (A.R. 331). At the second hearing, Plaintiff showed up wearing only one brace, explaining that

---

[2](...continued)
Plaintiff's medical clinic, and Plaintiff signed the acknowledgment of that notice. <u>See</u> A.R. 79-81. However, notices of the third and final administrative hearing were sent only to Plaintiff's original address. <u>See</u> A.R. 93-97, 102-07.

[3] The Administration "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983); <u>see also</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . .").

she was unable to find the brace after she had taken it off earlier that same week, and she thought her grandchildren might have it (A.R. 349). There is nothing about Plaintiff's different presentation at the hearings, or her explanation for the absence of one brace, that would support the rejection of Plaintiff's symptom testimony in total. Moisa v. Barnhart, 367 F.3d at 885.

Finally, the ALJ's statement that Plaintiff had reported she applied for unemployment benefits and ultimately had been denied unemployment benefits may have mischaracterized the record. Plaintiff does not appear to have reported that she ultimately was denied unemployment benefits. To the contrary, Plaintiff testified that after she stopped working she "had unemployment for one year" and "was getting unemployment for a year" (A.R. 328, 346). An ALJ's inaccurate characterization of the evidence of record can render an ALJ's credibility determination invalid. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).

In any event, the receipt of unemployment benefits is not necessarily inconsistent with disability under the Social Security Rules. See Freeman v. Colvin, 2014 WL 793148, at *2 & n.1 (W.D. Wash. Feb. 26, 2014) (quoting the Appeals Council as stating: "The Chief Administrative Law Judge's memorandum, dated August 9, 2010, makes it clear that one's claim to be able to work doesn't contradict one's claim to be disabled under Social Security Rules. Under our sequential evaluation process, one can be found able to perform some work, and still be found disabled. . . . The Chief Administrative Law Judge's memorandum also states that applications for unemployment

benefits must be considered as part of the overall evidence of record that is to support the ultimate determination.  While such an application cannot alone disqualify one for disability benefits, as the hearing decision suggests, it is to be considered as part of the sequential evaluation."); see also Mulanax v. Commissioner of Social Sec., 293 Fed. App'x 522, 523 (9th Cir. 2008) (unpublished decision stating that the receipt of unemployment benefits by itself fails to support a conclusion that a claimant is not credible; "Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain full-time work – eight hours per day, five days per week.  However under Oregon law, a person is eligible for unemployment benefits if she is available for some work, including temporary or part-time opportunities.  Therefore, [claimant's] claim of unemployment in Oregon is not necessarily inconsistent with her claim of disability benefits under the Social Security Act.") (internal citations omitted).  Under California law, a person who is only available for part-time work may still be eligible for unemployment benefits.  See Cal. Unemp. Ins. Code § 1253.8.  In this case, Plaintiff testified that she was able to work only part-time in 2007 (A.R. 327).  There is no indication whether Plaintiff based her claim for unemployment benefits on full-time or part-time work.  On this record, therefore, the fact that Plaintiff may have claimed to be able to do some work does not support the ALJ's adverse credibility determination.  See Carmickle v. Commissioner, 533 F.3d 1155, 1161-62 (9th Cir. 2008) ("[W]hile receipt of unemployment benefits can undermine a claimant's alleged inability to work full time, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work.  Only the

former is inconsistent with his disability allegations.  Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence.") (citations omitted); Vasquez v. Colvin, 2014 WL 65305, at *17 (D. Ariz. Jan. 8, 2014) (substantial evidence failed to support adverse credibility finding where the record did not establish whether the claimant who sought unemployment benefits held herself out as available for full-time or part-time work).[4]

## II. The ALJ Materially Erred in the Analysis of Dr. Jimenez's Opinion.

In addition to materially erring in the analysis of Plaintiff's credibility, the ALJ materially erred in the analysis of Dr. Jimenez's opinion.  A treating physician's opinions "must be given substantial weight."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's

---

[4] Ninth Circuit case law in this area does not appear to be entirely consistent.  In Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005), the Ninth Circuit rejected as a basis for finding a claimant not credible the claimant's having held himself out as being able to work during the period of alleged disability.  Id. at 687-88.  Other Ninth Circuit decisions have upheld adverse credibility determinations based at least in part on a claimant's having held himself or herself out as being able to work during the period of alleged disability.  See Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009) (among the specific findings supporting ALJ's adverse credibility determination was fact that claimant had sought employment); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (upholding ALJ's adverse credibility determination where the ALJ relied in part on the fact that the claimant "received unemployment insurance benefits . . . apparently considering himself capable of work and holding himself out as available for work").

opinion. . . .  This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physician opinions).  Even where the treating physician's opinions are contradicted,[5] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.") (citation and quotations omitted).

Dr. Jimenez authored letters in September of 2011 and October of 2012, listing Plaintiff's medical conditions and opining that Plaintiff's fibromyalgia, osteoarthritis, and carpal tunnel syndrome render her "physically disabled" (A.R. 296, 313).  Although the ultimate issue of disability is reserved to the Administration, the ALJ still must set forth specific, legitimate reasons for rejecting a treating physician's opinion that a claimant is disabled.  See Rodriguez v. Bowen, 876 F.2d at 762 n.7 ("We do not draw a distinction between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability.") (citations omitted).

---

[5] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

The ALJ rejected Dr. Jimenez's opinion because assertedly: (1) it was "not clear" whether Dr. Jimenez is familiar with the Social Security Act's definition of "disability"; (2) the opinion is "conclusory and does not detail the specific limitations of [Plaintiff's] conditions, nor does it list the objective medical findings upon which Dr. Jimenez based the opinion"; and (3) the opinion is "inconsistent with the medical records, which detail relatively unremarkable symptoms" and "routine and conservative treatment" (A.R. 16).

As discussed above, the record does not support the ALJ's determination that, as to Plaintiff's fibromyalgia, Plaintiff received only "routine and conservative treatment." Accordingly, this determination cannot constitute a legitimate reason for rejecting Dr. Jimenez's opinion.

An ALJ sometimes properly may reject a treating physician's conclusory opinion that is unsupported by adequate clinical findings. See, e.g., Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings") (citation omitted). In the present case, however, there exist objective medical findings to support Dr. Jimenez's opinion that Plaintiff has the conditions that Dr. Jimenez considers disabling. Provided with Dr. Jimenez's September, 2011 letter are MRI studies of Plaintiff's cervical and lumbar spine noting degenerative changes. See A.R. 297-300 (studies); A.R. 16 (ALJ summarizing same). The medical expert opined from the medical record that Plaintiff has sufficient tender points to meet the diagnosis for

13

fibromyalgia and a history of carpal tunnel syndrome. See A.R. 357 (expert testimony citing A.R. 177, 228). Additionally, the medical expert testified that Plaintiff would miss one to two days of work per month due to her fibromyalgia (A.R. 361). The vocational expert testified that if Plaintiff missed two days of work per month, there would be no jobs Plaintiff could perform (A.R. 362).[6]

Given the objective medical evidence to support Plaintiff's underlying conditions, and the ALJ's own finding that it was unclear whether Dr. Jimenez understood the definition of "disability," the ALJ should have contacted Dr. Jimenez further to develop the record and to clarify Dr. Jimenez's opinion. See Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); see also Smolen v. Chater, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record.") (citations

///
///
///
///

---

[6] The ALJ pressed the medical expert to opine regarding the frequency with which Plaintiff would miss two days of work per month versus one, and the expert replied, "I suspect with the nature of her conditions that it would be every other month" (A.R. 362). The vocational expert testified that missing two days every other month would not preclude a person from maintaining employment (A.R. 364).

omitted).[7]

III. **<u>Remand is Appropriate.</u>**

Because the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>see</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003) ("<u>Connett</u>") (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); <u>but see</u> <u>Orn v. Astrue</u>, 495 F.3d at 640 (appearing, confusingly, to cite <u>Connett</u> for the proposition that "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits") (quotations omitted); <u>see also</u> <u>Vasquez v. Astrue</u>, 572 F.3d 586, 600-01 (9th Cir. 2009) (agreeing that a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); <u>see generally</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency

---

[7] The parties cite 20 C.F.R. section 416.912(e)(1), which formerly required the Administration to recontact a treating physician where the physician's report did not contain all the necessary information or did not appear to be based on medically acceptable clinical techniques. <u>See</u> Plaintiff's Motion, pp. 6-7; Defendant's Motion, p. 5. The cited subsection has been deleted from section 416.912, and was not in effect at the time the ALJ rendered his final decision. <u>See</u> 20 C.F.R. § 404.1512(e) (eff. through Mar. 25, 2012).

investigation or explanation, except in rare circumstances).[8]

**CONCLUSION**

For all of the foregoing reasons,[9] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 9, 2014.

```
              _____/S/_____
                         CHARLES F. EICK
                  UNITED STATES MAGISTRATE JUDGE
```

---

[8] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For example, it is not clear whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if Dr. Jimenez's opinions were fully credited. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010). For at least this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000), does not compel a reversal for the immediate payment of benefits.

[9] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.

16